UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

ROD GOODMAN,

                                  Plaintiff,

                                  -v-

UNIVERSAL BEAUTY PRODUCTS INC. and
WALGREEN CO.,

                                  Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 9, 2018

17-cv-1716 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

     Plaintiff Rod Goodman is a professional photographer who takes portraits and headshots. On March 8, 2017, he commenced this action under 17 U.S.C. §§ 106, 501, and 602, alleging that defendants Universal Beauty Products Inc. ("UBP") and Walgreen Co. ("Walgreens") featured one of his photographs on the packaging for a product called Bald Guyz Clear Shave Gel without authorization. (ECF No. 1.) Plaintiff amended his complaint on June 9, 2017. (ECF No. 22, Am. Compl.) Discovery closed on January 5, 2018, (ECF No. 17), and now pending before the Court is plaintiff's motion for summary judgment. (ECF No. 43.) Defendants argue that, <u>inter alia</u>, plaintiff has not proven that his copyright registration is valid and defendants had an implied license to use the image in question. For the reasons stated below plaintiff's motion for summary judgment is GRANTED.[1]

---

[1] Plaintiff's Amended Complaint alleges copyright infringement against both defendants under 17 U.S.C. §§ 106 and 501, as well as infringing exportation against UBP under 17 U.S.C. § 602(a)(2).

I. BACKGROUND

The following facts are undisputed unless otherwise stated.

Plaintiff is a professional photographer who specializes in portraits and headshots. (ECF No. 45, Pl.'s Statement Pursuant to Local Rule 56.1 ("56.1 Statement") ¶ 1.) His clients purchase his photos through a website using a unique client access code. (Id. ¶ 4.) On or around November 22, 2010, plaintiff photographed headshots for a bald male model, Jimmy Dahroug. (Id. ¶ 7; see also Am. Compl., Ex. A; ECF No. 50, Decl. of Howard Brauner ("Brauner Decl.") ¶ 5; ECF No. 46-1, Declaration of Richard P. Liebowitz in Supp. of Pl.'s Mot. for Partial Summ. J. ("Liebowitz Decl."), Ex. A at 6-8.) At this time, plaintiff's website stated that "[n]o images may be reproduced or copied in any manner without written permission from the photographer." (56.1 Statement ¶ 5; see also Am. Compl., Ex. B.) It also contained a user agreement, which stated, in pertinent part:

> Products purchased through this website are subject to the terms set forth by Photographer in a separate license agreement . . . . [T]he acquisition of a copy of a product does not itself convey any rights under copyright or other laws to exploit the work. Products purchased by you through this website may not be reproduced, scanned, displayed, transmitted, modified, altered or otherwise exploited in any manner without the prior consent of the photographer.

(56.1 Statement ¶ 6; see also Am. Compl., Ex. C.)

In support of the instant motion, plaintiff also submitted a certificate of registration with the U.S. Copyright Office that states the date of the Photograph's

---

As the summary judgment motion and opposition papers are directed entirely toward the claims under §§ 106 and 501, the Court assumes that the claim under § 602(a)(2) is withdrawn.

first publication was November 22, 2010 and that the copyright was certified on January 9, 2017. (Liebowitz Decl., Ex. A at 2.)

Unbeknownst to Goodman, Dahroug sold his headshot ("the Photograph") to a company called BG Products ("BG"), which distributed and sold products including Bald Guyz Clear Shave Gel. BG marketed and sold the Shave Gel in a package featuring the Photograph. On November 5, 2013, BG entered into an asset purchase agreement ("the APA") with UBP, pursuant to which BG sold whatever rights and interest it had in the Bald Guyz trademark as well as its existing inventories of finished products and packaging materials—including the inventories of Bald Guyz Clear Shave Gel packaging materials. (ECF No. 50-1, Brauner Decl., Ex. A.) After the sale, UBP began to sell, <u>inter alia</u>, BG Clear Guyz Shave Gel, utilizing the Photograph.

At some unspecified time in 2014, plaintiff saw BG Shave Gel in a store and recognized the Photograph as the headshot he had taken, a copy of which he had sold to Dahroug in 2010. On March 8, 2017, plaintiff commenced this lawsuit against UBP for copyright infringement. On June 9, 2017, after discovering that Walgreens had purchased BG Shave Gel from UBP and sold it on its website, plaintiff amended his Complaint to add Walgreens as a defendant.

II. LEGAL PRINCIPLES

   A. <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

3

as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

B. <u>Valid Copyright Ownership</u>

To state a cognizable claim for copyright infringement, a plaintiff must establish that it owned a valid copyright and that the defendants copied the copyrighted work without authorization.  See Computer Assocs. Int'l v. Altai, 982 F.2d 693, 701 (2d Cir. 1992).

4

Under 17 U.S.C. § 410(c), "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." Hamil Am. Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999) (citations omitted); see also Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 763 (2d Cir. 1991) (same); Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997) (same). This presumption of validity is rebutted, however, "where other evidence in the record casts doubt on the question." Urbont v. Sony Music Entm't, 831 F.3d 80, 89 (quoting Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc., 342 F.3d 149, 166 (2d Cir. 2003)). The party challenging the validity of the copyright registration bears the burden of rebutting the presumption. Urbont, 831 F.3d at 89 (quoting Hamil Am., Inc., 193 F.3d at 98).

"[U]nder Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) (quoting Fed. R. Evid. 201(b)). A district court is "entitled to take judicial notice of [a party's] federal copyright registrations, as published in the Copyright Office's registry." Id.

C. Defenses

1. Implied License

There is no dispute that defendants sold a product with packaging featuring the Photograph. A copyright holder possesses the exclusive right to "reproduce

5

copyrighted work in copies" and to "distribute copies . . . of the copyrighted work to the public by sale . . . ." 17 U.S.C. § 106. As such, "an owner may sue for infringement those who exploit the creative work without permission or assignment." Davis v. Blige, 505 F.3d 90, 98 (2d Cir. 2007). Here, defendants assert that they possessed an implied license to use the Photograph on the packaging in question.

A copyright owner who grants a license "waives his right to sue the licensee for copyright infringement." Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998). "[C]ourts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, <u>intending</u> that [the other] copy and distribute it.'" SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., 211 F.3d 21, 25 (2d Cir. 2000) (quoting Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990)) (emphasis added) (alteration in original). While the Second Circuit has not yet developed a test for determining whether a copyright owner has conveyed an implied license, "our Circuit has followed the lead of other appeals courts and cautioned that implied non-exclusive licenses should be found only in narrow circumstances where one party created a work at the other's request and handed it over, intending that the other copy and distribute it." Psihoyos v. Pearson Educ., Inc., 855 F. Supp. 2d 103, 120 (S.D.N.Y. 2012) (quoting Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F.Supp.2d 332, 344 (S.D.N.Y. 2009).

In this district, the "law in the area of implied licenses shows a measure of conflict." Psihoyos, 855 F. Supp. 2d at 119. One approach, the Effects test, determines whether the plaintiff intended "that the defendant be permitted to use and distribute his work," but it does not construe "payment in full as a condition precedent to implying a license." Psihoyos, 855 F. Supp. 2d at 120 (citing Effects Assocs., 908 F.2d 555). The other, more "relaxed" approach looks to the "oft-stated principle that 'consent given in the form of mere permission or lack of objection' is also equivalent to a nonexclusive license and is not required to be in writing.'" Id. at 121 (quoting Keane Dealer Servs., Inc. v. Harts, 968 F. Supp. 944, 947 (S.D.N.Y. 1997)). "Ultimately, whichever test is applied, the question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." Id. at 124 (citing Ulloa v. Universal Music and Video Distrib. Corp., 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004)).

Additionally, "in most of the cases addressing the defense of license, the issue has been whether a license is held by the accused infringer. Since, in such cases, evidence of a license is readily available to the alleged licensee, it is sensible to place upon that party the burden of coming forward with evidence of a license." Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995) (internal citation omitted).

2. Statute of Limitations

"In 1957, Congress . . . prescribed a three-year look-back limitations period for all civil claims arising under the Copyright Act. The provision . . . reads: 'No

7

civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.'" Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1968-69 (2014) (quoting 17 U.S.C. § 507(b)). "A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" Id. at 1969 (quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp., 522 U.S. 192, 201 (1997)) (alteration in original). "A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." Id.; see also Merch. v. Levy, 92 F.3d 51, 56 (2d Cir. 1996) ("A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised.").

However, "[i]t is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong." Petrella, 134 S. Ct. at 1969. Accordingly,

> an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

Id. at 1969-70 (internal citations omitted).

### 3. Laches and Equitable Estoppel

"[I]n face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." Id. at 1974. "The defense of laches bars a claim when a

8

defendant has suffered prejudice because of a plaintiff's unreasonable and inexcusable delay in bringing the claim. Laches bars claims for prior infringement but does not prevent a plaintiff from pursuing future damages for infringement arising later in time." Legislator 1357 Ltd. v. Metro-Goldwyn-Mayer, Inc., 452 F. Supp. 2d 382, 391 (S.D.N.Y. 2006) (citing New Era Publ'ns Int'l v. Henry Holt & Co., 873 F.2d 576, 584 (2d Cir. 1989)). However, "the express statute of limitations in the Copyright Act precludes the use of the laches defense in toto, regardless of the relief sought." Price v. Fox Entm't Grp., Inc., No. 05-cv-5259, 2007 WL 241387, at *3 (S.D.N.Y. Jan. 26, 2007) (citing Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789 (4th Cir. 2001); Ivani Contracting Corp. v. City of New York, 103 F.3d 257 (2d Cir. 1997)); see also Ivani Contracting, 103 F.3d at 260 ("The prevailing rule, then, is that when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely.").

The defense of equitable estoppel, on the other hand, "applies when 'the party to be estopped had knowledge of defendant's infringing conduct, and either intended that his own conduct be relied upon or acted so that the party asserting the estoppel has a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment.'" Legislator 1357, 452 F. Supp. 2d at 391 (quoting Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 456 F. Supp. 531, 535 (S.D.N.Y. 1977)). "Unlike laches,

9

equitable estoppel can be used to prevent a plaintiff from recovering prospective as well as past damages." Legislator 1357, 452 F. Supp. 2d at 391.

III. DISCUSSION

As set forth below, the Court finds that plaintiff owned a valid copyright and commenced this action within the statute of limitations. The facts do not support laches or equitable estoppel. Furthermore, there is no evidence from which a reasonable juror could infer that defendants had an implied license to utilize the Photograph.

A. Valid Copyright Ownership

With his motion for summary judgment, plaintiff submitted a certificate of registration for a work entitled "Bald Man.jpg; 11/22/10." (Leibowitz Decl., Ex. A at 2.) The registration notes that the photograph was first published on November 22, 2010 and that the certification was completed by Richard Liebowitz on January 9, 2017. (Id.) The Court may take judicial notice of this certificate. Island Software & Computer Serv., 413 F.3d at 261. As described below, defendants have made two arguments in support of their position that the registration is deficient. However, they have failed to proffer any evidence in support of such arguments; unsupported arguments alone do not raise a triable issue that defeats summary judgment.[2] Urbont, 831 F.3d at 89.

First, defendants contend that because the registration was not made within five years of the first publication, it is not prima facie evidence of a valid copyright.

---

[2] The Court notes that a full period of discovery has been completed by the parties.

In this regard, defendants point to the first publication on November 22, 2010, and the registration on January 9, 2017.  But even assuming that the registration is not <u>presumed</u> valid, all defendants have done is point to the publication and registration dates, asserting: "See, this undermines the validity of the copyright." But, it does not; such information opens the door to a factual challenge—but no such challenge materialized.  Defendants still must proffer some evidence to bring its validity into question.

Second, defendants argue that the certificate submitted by plaintiff does not "prove" that it relates to the Photograph at issue here; rather, they note, the certificate merely refers to a work entitled "Bald Man.jpg; 11/22/10."  But again, defendants offer nothing more than speculative assertions to support this contention.  A full period of discovery has occurred in this case; defendants had the opportunity to request a certified deposit copy from the U.S. Copyright Office and submit it with their opposition to plaintiff's motion for summary judgment.  Their failure to submit any evidence, however, prevents them from raising a triable issue on the validity of the registration.

Additionally, plaintiff submitted a declaration from his attorney, Richard Liebowitz, which states that the registration is in fact for the Photograph.  Notably, Liebowitz is also the person whose name is on the certification, indicating that he is the one who filed for certification, and thus has first-hand knowledge of which artistic work it relates to.  However, once again, defendants offer no evidence to counter Leibowitz's sworn declaration.

11

As such, defendants have failed to raise a genuine dispute of fact as to copyright ownership.

B. Defenses

1. Implied License

Defendants do not dispute that the Photograph is reproduced on the Bald Guyz Clear Shave Gel packaging. Rather, they argue that in all events, there is a triable issue as to whether they had an implied license for such use. As discussed above, defendants bear the burden of proof on this issue. Bourne, 68 F.3d at 631. To raise a triable issue, defendants must proffer evidence supportive of an implied license. Under the Effects test, defendants must offer evidence that indicates plaintiff intended to permit the defendant to use the Photograph. Effects Assocs., 908 F.2d 555. Under the more relaxed approach, defendants must demonstrate that plaintiff consented to the Bald Guyz Shave Gel packaging through "mere permission" or a "lack of objection." Keane Dealer Servs., Inc. v. Harts, 968 F. Supp. at 947. There is no evidence in the record that raises a triable issue of fact under either approach.

In support of their position, defendants principally point to Dahroug's initial receipt of the Photograph in electronic form. According to defendants, this was a photograph of Dahroug in a digital format that enabled endless copies. However, defendants ignore the undisputed evidence that Dahroug received his copy of the Photograph subject to explicit restrictions on use. Those restrictions cabined Dahroug's use of the Photograph in various ways; as particularly relevant here,

12

Dahroug was prohibited from reproducing, displayed, or otherwise exploiting the Photograph in any manner without plaintiff's prior consent. (56.1 Statement ¶ 6; see also Am. Compl., Ex. C.) It was in this context that Dahroug somehow conveyed a copy of the Photograph to BG, who placed it on the Shave Gel packaging. Defendants have not proffered any facts suggesting that Dahroug led BG to believe Dahroug had more rights than he did in fact have.

The format in which Dahroug received the Photograph from plaintiff also does not help defendants: it is undisputed that plaintiff gave Dahroug permission to use the Photograph solely as a headshot. (Mem. Opp. at 8.) But the fact that plaintiff authorized Dahroug to use the Photograph as a headshot falls far short of suggesting an implied license for any and all commercial uses, including product packaging.

But in addition, defendants have not proffered evidence of any intent on plaintiff's part to convey a license. For instance, defendants have not proffered evidence of a discussion or communication (implicit or explicit) between plaintiff and Dahroug suggesting plaintiff intended, expected, or anticipated that he was conveying a right to reproduction in external, commercial circumstances (let alone unlimited and perpetual reproductions). Rather, the record demonstrates that, if anything, plaintiff communicated the opposite intention. His website contained a disclaimer and a user agreement that made clear that the "acquisition of a copy of a product does not itself convey any rights under copyright" and that products purchased by a customer may not be "reproduced, scanned, displayed, transmitted,

13

modified, altered or otherwise exploited in any manner without the prior consent of the photographer." (Am. Compl., Ex. C.) In any case, the mere act of providing a client with a work in digital format does not raise a triable issue of fact. (That is particularly so when, as here, there are explicit restrictions on use.) Indeed, if this Court were to rule otherwise, the digital conveyance of a work could always be cited to defeat summary judgment; more is required.

Defendants also claim that plaintiff's failure to file a lawsuit for several years after discovering the infringement is evidence of an implied license, as plaintiff admits he has known about the infringement since 2014. According to defendants, this delay in bringing suit constitutes a "lack of objection" under the relaxed approach. As discussed in more detail below, Congress set a three-year statute of limitations for copyright claims; certainly, commencing a lawsuit within the limitations period does not, without more, constitute a sufficient basis for "lack of objection" to raise a triable issue as to the existence of an implied license. But in addition, a delay by plaintiff in commencing a lawsuit cannot, on its own, suggest a question of fact as to an implied license. Defendants offer no assertion that they knew plaintiff was aware of the Bald Guyz Shave Gel packaging—as such, they have not persuaded the Court that they relied in any way on plaintiff's delay, or that defendants interpreted his delay as evidence he permitted their usage of the Photograph.

Accordingly, because defendants have not met their burden of raising a triable issue of fact as to the existence of an implied license, see Bourne, 68 F.3d at 631, this defense does not shield them from liability.

C. Statute of Limitations, Laches, and Estoppel

Plaintiff claims to have first discovered the infringement in 2014; he notes further that defendants redesigned the Bald Guyz Shave Gel packaging on or around July 7, 2014. (ECF No. 54, Reply Mem. at 9; Am. Compl., Ex. D.) Plaintiff submitted screenshots of the Bald Guyz website taken from an internet archive website, such that the screenshots display what the website looked like on July 7, July 8, August 7, and November 29, 2014. These screenshots do not demonstrate that the packaging did not include the Photograph prior to July 7, 2014, as plaintiff suggests. But they do indicate that infringement offenses occurred within the three years prior to plaintiff's commencement of this lawsuit on March 8, 2017. Under the separate-accrual rule, the statute of limitations begins to run separately for each infringing act (i.e., any time a pack of Bald Guyz Shave Gel featuring the Photograph is sold). Petrella, 134 S. Ct. at 1969-70. So while plaintiff may not be able to hold defendants liable for any infringement prior to March 8, 2014, the statute of limitations does not bar damages for infringement(s) after that date.

Additionally, defendants assert defenses of laches and equitable estoppel. The defense of laches is not available against a claim made within an express statutory limitations period; as such, defendants cannot assert this defense to avoid

15

liability for any infringement that occurred after March 8, 2014.³ Ivani Contracting, 103 F.3d at 260. As to equitable estoppel, defendants have proffered no evidence that plaintiff intended defendants to rely upon his action (or inaction), nor that they in fact relied on plaintiff's conduct to their detriment. As such, this defense cannot shield them from liability. Legislator 1357, 452 F. Supp. 2d at 391.

2. Other Defenses

Defendant Walgreens has asserted twenty-three affirmative defenses: (1) failure to state a claim; (2) copyright registration invalidity or unenforceability; (3) denial of copyright ownership; (4) license; (5) failure to register in compliance with Copyright Act; (6) lack of standing; (7) statute of limitations; (8) waiver, estoppel, justification and/or consent; (9) causality; (10) laches and/or unclean hands, and/or in pari delicto; (11) Plaintiff's own conduct; (12) not responsible; (13) no Photograph in the FAC exhibits; (14) failure to join indispensable party; and (15) indemnity. (ECF No. 39, Answer and Affirmative Defenses at 4-8.)

Defendant UBP has asserted twenty-two affirmative defenses: (1) failure to state a claim (2) copyright registration invalidity or unenforceability; (3) denial of copyright ownership; (4) license; (5) failure to register in compliance with Copyright Act; (6) lack of standing; (7) statute of limitations; (8) waiver, estoppel, justification and/or consent; (9) causality; (10) laches and/or unclean hands, and/or in pari delicto; (11) Plaintiff's own conduct; (12) not responsible; (13) no Photograph in the

---

³ However, the statute of limitations and laches defenses remain available to defendants at the damages phase, insofar as plaintiff asserts damages for any infringing offenses that occurred before March 8, 2014.

16

FAC exhibits; and (14) failure to join indispensable party. (ECF No. 33, Def. Universal Beauty Products, Inc.'s Answer and Affirmative Defenses to Pl.'s First Am. Compl. at 5-8.) At this stage, fifteen of Walgreen's defenses and fourteen of UBP's defenses are relevant to this motion as they relate to liability. (The others relate to damages.)

As set forth above, this Opinion addressed only those defenses which defendants raised in their opposition papers: copyright registration invalidity; implied license; statute of limitations; estoppel; and laches. Defendants have not proffered any evidence in support of the other relevant defenses; as such, those do not survive plaintiff's motion for summary judgment (though the defenses relevant to damages remain). See F.D.I.C. v. Giammettei, 34 F.3d 51, 54–55 (2d Cir. 1994) ("Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case. . . . After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." (internal quotations and citations omitted)).

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED. Trial will be limited to the question of damages. The Clerk of Court is directed to close the open motion at ECF No. 43.

SO ORDERED.

Dated: New York, New York
March 9, 2018

_____
KATHERINE B. FORREST
United States District Judge